Good morning, Your Honor. Dennis Carroll appearing on behalf of Appellant Vincent Barbee. I'd like to try to reserve three minutes for rebuttal. Try to keep track of your own time. I'll do my best. Thank you. May it please the Court. This is a very straightforward case in many ways. There aren't really any factual disputes or any issues regarding the factual findings found by the trial court. It's a straightforward de novo review of the trial court's finding that the totality of circumstances created a reasonable and particularized suspicion of criminal activity at the time the officer ordered the occupants of the vehicle to basically show their hands or raise their hands. And here the trial court committed error. First, the trial court did exactly what the Fourth Circuit recently cautioned against in the Foster case, and that is using whatever facts, however innocent, as indicia of suspicious activity. And secondly, what was not included in the court's analysis in this case, and I think is fairly common in Fourth Amendment cases, is a lack of consideration for other factors that tend to show that the activity is not suspicious or does not tend toward illegal behavior. And it's like there's just one side of the ledger, things that the officer phrases or thinks are suspicious factors. But here you have many other factors that must be kept in mind. This is a public place. The occupants of the car were illegally parked. It was 9 a.m. in the morning. They were cooperative. Although it was a high-crime area, and that is a legitimate factor, it was a legitimate business. They weren't hidden behind anything. They were in plain view and open. But instead what the court did was relied on a number of factors that I would suggest are either innocuous or generalizations that cast suspicion on general society or citizens in general. And that is one thing the court, this court, stressed in the Monza-Dorado case, that in determining whether a Terry stop can be made, courts shouldn't rely on generalizations that, if accepted, would cast suspicion on large segments of the law-abiding population or really over-rely on innocuous behavior. What about the observation to which the police testified about glassy eyes signifying drug use? Well, two things on that. Whether it was glassy or glossy, I think both words are used frequently throughout the record, that is a factor that can be considered. And to be clear, we're not suggesting that any of the factors that the court considered have to be just thrown out. Let me ask it this way. If a police officer has reason to believe that the person is on drugs, is that sufficient to justify a Terry stop? I would suggest yes, but that was not the case in this situation. In fact, the officer at excerpt page 57 and page 80 admitted that when he had contact with Mr. Barbie, he did note the glassy eyes, but he said his contact with him was for such a limited period of time that he could make no determination as to whether or not Mr. Barbie was under the influence of drugs or had used drugs at that point in time. So we don't have that fact in the record in this case, in part because this was a very quick, people were observed in the car for 10 seconds, and it was a very quick conversation with the person in the back, and then a very quick conversation with Mr. Barbie before the detention occurred. And the officer should have conducted more investigation to make that determination, whether Mr. Barbie was under the influence of drugs or may have been intoxicated at that time. You say determination, but if it's a Terry stop, does he need more than a reasonable suspicion that he's on drugs? No, he doesn't. Yeah. But I don't think he came to a reasonable suspicion that he was on drugs at that point in time. I think the officer, he was very frank that he had not come to any determination that Mr. Barbie was under the influence, but he did note the glassy eyes, I would concede that point. But the officer also relied on a variety of factors that are pretty innocuous. People sitting in a car outside of a hotel, that is a legitimate business, and only observing them for 10 seconds. The fact that there were four people in the car, although the officer said, well, if there was one person, that would be just as suspicious. The fact that people were moving inside the car while they were being observed for 10 seconds. The physical characteristics of the people in the back seat. Now, certainly the officer approached Mr. Barbie, had the conversation. Yes, he did note the glassy eyes and the nervous demeanor of Mr. Barbie. But when you look at the cases, that does not rise to the level of reasonable suspicion justifying a terrorist stop. And I think the most important case is the Foster case, recently decided by the Fourth Circuit. And in that case, you have a person in a car who sees a police officer. Another person pops up. He sees the police officer. His arms are waving wildly. The officer makes contact with the people in the car. He's observing them for 15 minutes. He knows one of the people in the car from a prior drug arrest. He does investigation. He calls in to find out more about the defendant who's in that car. Learns that he's under investigation, and then effectuates the traffic stop. And here, we just don't have those kind of facts, because this was a very quick interaction between the officer and the occupants of the car. I think the case cited by the government, or one of the cases cited by the government, Ramirez, is a pretty good case in that it really highlights the differences between a legitimate terrorist stop and what happened in this case. That case, you had the highly unusual circumstance of a man at 8 p.m. asleep in a car outside of a drugstore with his parking lights on, and I believe the engine was running. He had an elevated rate of breath, and when he was contacted by the police officer, he was irritable. Pupils were dilated, and the officer, who had specific drug recognition training, determined that he was under the influence, and therefore effectuated the detention. And here, we just don't have that kind of conclusion reached by the officer. So I'd like to just reserve the rest of my time, if the Court has no other questions at this point. Thank you, Counsel. Good morning, Your Honors. May it please the Court, my name is Jill Otake, and I represent the United States in this matter. As Counsel pointed out, of course, this is de novo review, but undoubtedly Judge Robart got it right, and the reason why he got it right is he did what the United States Supreme Court directed him to do. He looked at the totality of the circumstances, what he described as a mosaic of facts in this case. And while many of the facts suggested innocent conduct, not all of the facts did. And even if all the facts had suggested innocent conduct, under the Sokolov case of the United States Supreme Court, there are circumstances in which lawful conduct can justify suspicion. Because Counsel raised the Foster case a couple of times in his argument, I'd like to take a few moments to address why that case is not on point here. The Foster case is clearly distinguishable. One of the primary differences pointed out by the Fourth Circuit in that case is that that case took place in a low-crime area, in the parking lot near a restaurant where the detective had been having lunch with his wife. That case is also different because the officer conceitedly could not tell that the defendant in that case was nervous, based either on his speech or on his actions. Ultimately, the Fourth Circuit pointed out that the government in that case conceded that only three facts justified the stop. The defendant's criminal history, his sudden appearance jumping up in the seat of the car, and his arm movements. The facts in this case are distinguishable from the cases on which the defense relies. Undoubtedly, there is no dispute as to when the seizure happened. The seizure happened after the officer had contact with Mr. Barbie, saw his glassy eyes, heard his very nervous speech, his over-explaining of what happened, his shaking of his arms and hands that he described as more extreme than what he's seen in his experience, his shaking and nervousness. They appeared not to have any business there. And, of course, we know that when the officer first approached, it looked like the passenger said something, and Mr. Barbie withdrew his arm from the back seat. Ultimately, here, the totality of the circumstances, all of the facts in this case, Your Honor, if you take them as a whole, support the reasonable and articulable suspicion. It was at 9 in the morning? It was at 9 in the morning, Your Honor. And what's a high crime area? That means not drugs particularly, but there's a lot of crime in the area? He indicated that this area was not only the stay-out-of-drug area, but this particular parking lot itself of this motel was a place that he knew almost exclusively as being related to criminal activity. Adjacent to this parking lot was a garage that he knew to be a den of drug activity. So he was general about the parking lot, more specific about the garage, which in the excerpts of record, there's a photograph that you can see of how close that garage is to this very small parking lot. If Your Honors have no further questions, I will rest on my brief in this matter. Thank you, Katz. Thank you. I would have just two minor points. One, it's hard to find a case that's perfectly analogous to this case. Like I said, I think the Foster case is a good case, and the case that Ramirez cited by the government is a good contrast to this case. The government distinguishes the Foster case in part because of the high crime area. And I think courts have clearly been cautious about how we use a high crime area in determining whether or not there's reasonable suspicion. And I think that's illustrated in this case because the officer basically assumed that anyone at this legitimate business was involved in criminal activity. He said that in so many words that he doesn't remember ever having a contact with someone there who had not been involved in criminal activity. And that casts suspicion on anyone who uses a low-income motel at that area, and that's basically what this is. And so I think courts are rightfully cautious about using that and putting much weight to that as a factor. I agree the case law is clear. It is a factor that can be considered. I'm not suggesting it be thrown out, but just that it be accorded the weight it deserves, which is not much. I'd also point to the Keith case, which was the Sixth Circuit case involving some individuals who were at a drive-up liquor store and were approached by people who came to the passenger side. There was something exchanged. They saw the police. It was 2 a.m., and then they engaged in evasive conduct. And here we don't have that kind of evasive conduct. In the Keith case, they drove around to the side or the back of the store where they were out of view of the police, and I think that is another analogous case that supports a finding that the trial court erred below. And unless the Court has any other questions, I'll rest on my brief for the remaining points. Thank you, counsel. Thank you.
judges: Reinhardt, Fletcher W. , Rawlinson